UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN E. TABIN,　　　　　　　　　　　　No. 07-13836

　　　　　Plaintiff,　　　　　　　　　　　　District Judge Anna Diggs Taylor

v.　　　　　　　　　　　　　　　　　　　　　Magistrate Judge R. Steven Whalen

OFFICER RYAN E. MILLER, in his
individual and official capacity, and
VILLAGE OF LEXINGTON, a
Municipal Corporation,

　　　　　Defendants.
　　　　　　　　　　　　　　　　　　　　/

**REPORT AND RECOMMENDATION**

　　　　On September 12, 2007, Plaintiff filed the instant action pursuant to 42 U.S.C. §1983, alleging excessive force by Officer Ryan E. Miller during the course of his September 11, 2005 arrest. Before the Court is Defendants Miller and Village of Lexington's *Motion for Summary Judgment* [Docket #21], filed August 28, 2008, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendants' motion be GRANTED as to both the federal and state claims, dismissing Defendant Miller and Defendant Village of Lexington WITH PREJUDICE.

# I. FACTUAL BACKGROUND

Plaintiff, a Michigan Department of Corrections ("MDOC") inmate at the time of filing, makes the following allegations. At approximately 1:00 p.m. on September 11, 2005, Defendant Miller, a Village of Lexington Police Officer, was dispatched to assist a Sanilac County Sheriff's Department investigation of a home invasion. *Complaint* at ¶6. A Sanilac County deputy directed Miller stake out a nearby intersection. *Id.* at ¶7. Defendant Miller, stationed east of the intersection, observing a "small gray vehicle" approaching from the south turn westward at the intersection. *Id.* at ¶8. Defendant Miller followed the westbound vehicle from the main road onto a private driveway. *Id.* at ¶9. Defendant Miller parked and exited the patrol car, approaching the house. *Id.* at ¶10. Observing the approaching officer, Plaintiff, sitting on a front porch swing, started walking toward the vehicle. *Id.* at 11. Disregarding Miller's order to stop, Plaintiff climbed into the vehicle and closed the door. *Id.* at ¶¶12-13. Miller, approaching the vehicle, ordered Plaintiff out of the vehicle. *Id.* at ¶14. Plaintiff, again ignoring the officer's order, started the car. *Id.* at ¶15. While Defendant Miller reached through the car window in an attempt to turn off the ignition, Plaintiff put the car in gear, backing up while Miller's arm (tangled in the steering wheel) was in the vehicle. *Id.* at ¶15-16. Defendant Miller, freeing his arm and running to the west side of the driveway, then drew his weapon, ordering Plaintiff to stop. *Id.* at ¶16. Plaintiff then put the vehicle in drive, riding past Defendant in an attempt to exit the driveway. *Id.* at ¶19. Defendant then fired a bullet, penetrating the driver's side door and hitting Plaintiff's right leg. *Id.* Plaintiff seeks compensatory and punitive damages, also alleging state law claims

of assault and battery and gross negligence against Defendant Miller as well as a vicarious liability claim against Defendant Village of Lexington.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing

party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

**A. The Absence of a Constitutional Violation**

Defendants, concurring in large part with Plaintiff's account of events preceding the shooting, also state that Plaintiff's car fit the description of a vehicle spotted near the scene of the home invasion. *Docket #21,* Exhibit A. They add that later, when Defendant Miller attempted to question Plaintiff (after having spotted and followed him) Plaintiff advanced toward his car in an attempt to escape while Defendant was radioing his whereabouts to a county deputy. *Id.* Defendants also state that when Miller reached into the car's window to turn off the ignition, Plaintiff turned the steering wheel, catching Defendant's arm in steering wheel while shifting into reverse, dragging him for several feet. *Id.* Defendants also state that Plaintiff, after shifting from reverse to drive, drove directly toward the officer. *Id.* As the car headed toward him, Miller states that he "dodged the vehicle while firing a shot." *Id.* Defendants allege that Plaintiff "never attempted to stop," continuing out of the driveway

and eastbound on the surface road. Several nearby police departments joined in the pursuit which ended when an officer from a neighboring town forced Plaintiff's vehicle off the road. *Defendant's Brief* at 3. Citing *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), Defendants argue that because Miller had probable cause to believe that Plaintiff posed a threat of serious harm to the officer and the general public, the use of a firearm was reasonable. *Defendants' Brief* at 8-10.

A claim of excessive force brought by a free individual, such as the Plaintiff was at the time of his arrest, is analyzed under the Fourth Amendment.[1] *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor, supra*. That standard is objective, and is applied without reference to the officer's subjective motivations. *Id.* In *Gaddis v. Redford Township*, 364 F.3d 763,772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d

---

[1] Proceeding *pro se*, Plaintiff's allegations of civil rights violations in the events surrounding his arrest are construed as an excessive force claim. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham* at 397.

Given the circumstances at hand, Defendant's use of even deadly force was reasonable. *See Tennessee v. Garner, supra,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Plaintiff denies that when putting the car in drive that he aimed it at Defendant, stating that he was simply trying to evade arrest. However, Plaintiff does not dispute that when Defendant caught his arm in the steering wheel in an attempt to shut off the ignition, Plaintiff put the car in reverse, dragging the officer for several feet. *Complaint* at ¶¶15-16. Plaintiff also admits after Defendant freed his arm, the officer he drew his weapon, ordering Plaintiff to stop. *Id.* at ¶16. Plaintiff admits that he disregarded the order, instead, putting the vehicle in drive and exiting the driveway. *Id.* at ¶19. Further, Defendant states that the Plaintiff drove directly toward him, causing him to dodge the car. Defendant might state that in

driving "past" the Defendant, it was only his intention to flee, not to injure, but even so, an objective observer could well see the situation differently. Again, whether the degree of force used was constitutionally excessive must be determined in the context of how the situation would appear objectively to a reasonable officer who is involved in rapidly unfolding events. The Plaintiff's actual subjective intent is irrelevant.

Even if the disputed facts are omitted from consideration, Plaintiff's acknowledged behavior indicates that Defendant's actions were reasonable. Just before the shooting, Defendant was confronted with an individual who by his own admission disobeyed an order to halt and then an order to step out of the car; allowed the officer to be dragged alongside his vehicle; and then disregarded a third order after Defendant had drawn his weapon. *Id.* at ¶¶15-19. By itself, Plaintiff's willingness to allow Defendant to be dragged by a car (showing of lack of regard for the life and safety of both Defendant and the general public) indicates that shooting at the vehicle in an attempt to stop Plaintiff was objectively reasonable.

Moreover, Defendant's split-second decision to fire, placed in the context of the day's earlier events, is even less suggestive of a constitutional violation. The chain of events culminating in the claim of excessive force began with Defendant Miller investigating a home invasion - a felony under Michigan law. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Defendant properly initiated an investigative stop of Plaintiff, based on his reasonable suspicion that Plaintiff, whose car fit the description of the one used in the crime, had been involved in the home invasion. He did not need probable cause at this

point, but subsequent events gave him probable cause to arrest the Plaintiff for resisting and obstructing arrest. Under these facts, no jury could reasonably find in favor of the Plaintiff.

Further, because there was no violation of Plaintiff's constitutional rights, Defendant is also entitled to summary judgment on the basis of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002). Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, a police officer acting in the course of his official duties is protected by qualified immunity.

**B. Collateral Estoppel**

Next, Defendants argue that Plaintiff is collaterally estopped from litigating the present issues which they contend were decided in Plaintiff's criminal conviction. *Defendants' Brief* at 7. Citing *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), Defendant notes that "Michigan law precludes [] Plaintiff from re-litigating the issue of whether his actions constituted a risk of harm to [Defendant] Miller. *Defendants' Brief* at 7. Citing a transcript of Plaintiff's plea agreement, Defendants note that Tabin pled guilty to willfully failing "to obey . . . direction by attempting to flee or elude" Defendant Miller as well confessing to assaulting, battering, wounding, restricting, opposing, obstructing, or endangering" the officer. *Defendants' Supplemental Brief* at 1; Docket #23, Exhibit A.

The doctrine of collateral estoppel generally precludes relitigation of an issue of fact or law which was previously decided in a different cause of action. *Montana v. United*

*States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Collateral estoppel may be raised as a defense in a §1983 case where the prior issue of law or fact was decided in the context of a state criminal case. *Allen*, *supra*, 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Successful application of the doctrine entails four requirements: (1) the issue in the prior case is identical to the issue in the current case; (2) the issue must have been actually litigated; (3) the issue must have been necessary and essential to judgment on the merits of the prior case; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceedings. *United States v. Real Property Known and Numbered as 415 E. Mitchell Ave., Cincinnati, Ohio*, 149 F.3d 472, 476 (6th Cir. 1998).

On January 6, 2006, Plaintiff pled guilty in state court to the charges of home invasion in violation of M.C.L 750.110a(3); willfully failing to obey Miller's direction by attempting to flee or elude, M.C.L. 257.602a(3)(a), and resisting and obstructing Miller pursuant to M.C.L. 750.81d(1). *Docket #23* at Exhibit A. Disputing the contention that he is estopped from bringing the present claim, Plaintiff submits an excerpt from his plea transcript, noting that while he admitted to resisting and obstructing the officer, he denied *assaulting* him. *Docket #25* at 4. The same excerpt indicates that in response, the sentencing court, stating that M.C.L. 750.81(D)(1) includes "[a]ssault, batter, wound, resist, obstruct, oppose *or* endanger," (emphasis added) noted that "[a]nyone of those is sufficient to support the charge. You don't have to assault and batter someone to be guilty of resisting and obstructing an officer." *Id.* Even absent a specific confession that Plaintiff assaulted Miller, the admission

-9-

that Plaintiff violated the statute by resisting and obstructing Defendant's efforts to arrest him bar him from stating otherwise here. Because all four elements of collateral estoppel have been met in this case, the state criminal judgment estops Plaintiff from contesting the fact that he resisted and obstructed. While Plaintiff contends that he was merely seeking to avoid arrest, "his Fourth Amendment claim of excessive force cannot be assessed independently "of his resistance to and obstruction of the police officer[] against whom he brings suit." *Sinclair v. City of Birmingham* 2005 WL 2448864, *5 (E.D.Mich.,2005)(Rosen, J. adopting the report of Whalen, M.J.).

Under these facts, no trier of fact could reasonably find in Plaintiff's favor. *Anderson, supra*. Accordingly, Defendant is entitled to summary judgment.[2]

### C. State Law Claims[3]

---

[2] Given this analysis, it is not necessary to address the Defendants' alternative argument for dismissal under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

[3] *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) authorizes federal courts "to assert jurisdiction over state law claims when there existed a 'common nucleus of operative fact' . . . so long as the court ha[s] original jurisdiction over at least one claim." *Smelley v. City of Detroit,* 2007 WL 4326905, *1 (E.D.Mich.,2007)(Cleland, J.)(*citing Gibbs,* 383 U.S. at 725);28 U.S.C. §1367. The Court will therefore discuss Plaintiff's state law claims arising from the same incident.

Defendants argue next that because Miller's shooting of Plaintiff was justified, he is protected by governmental immunity from the allegations of assault and battery as well the gross negligence claim. *Defendant's Brief* at 13. *Citing Graham, supra*, at 396-397, Defendants contend that having shown that the officer's actions were reasonable, the state claims are likewise dismissible. *Defendant's Brief* at 13.

The common law tort of assault requires a showing of an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich.App. 110, 119, 472 N.W.2d 16 (1991), citing *Tinkler v. Richter*, 295 Mich. 396, 401, 295 N.W. 201 (1940). The tort of battery denotes a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.* However, the Court in *VanVorous v. Burmeister*, 262 Mich.App. 467, 483, 687 N.W.2d 132 (2004), noted that "government actors may find it necessary–and are permitted–to act in ways that would, under different circumstances, subject them to liability for an intentional tort. To find for plaintiff on these [assault and battery] claims, our courts would have to determine that the officers' actions were not justified because they were not objectively reasonable under the circumstances." *See also Brewer v. Perrin*, 132 Mich.App. 520, 528, 349 N.W.2d 198 (1984) ("governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified").

-11-

M.C.L. 691.1407.

As discussed above, the actions of Defendant were objectively reasonable, and, for the reasons stated in *VanVorous* and *Brewer*, are not actionable under a state law assault and battery theory. Likewise, because Defendant Miller's decision to fire his gun at the vehicle of the fleeing felon was reasonable under the circumstances, the claim of gross negligence is subject to dismissal. M.C.L. 691.1407(7)(a) "defines 'gross negligence' as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Jones v. Oakland County,* — Fed.Supp.2d —, 2008 WL 4866041, *8 (E.D.Mich.2008)(Rosen, J.); *Jackson v. County of Saginaw,* 458 Mich. 141, 580 N.W.2d 870, 874 (1998). "The question whether a government employee's conduct amounts to gross negligence may be decided as a matter of law 'if, on the basis of the evidence presented, reasonable minds could not differ' on the outcome of this inquiry." *Id.* (*citing Jackson,* 580 N.W.2d at 873 (internal quotation marks and citation omitted)). Because Defendants have shown that under the circumstances, "reasonable minds could not differ" on the propriety of Miller's actions, the state law claims against him should be dismissed.

### D. Federal and State Claims Against Defendant Village of Lexington

Finally Defendants argue that because Plaintiff cannot show an unconstitutional policy or a failure to train by the Defendant Village of Lexington, claims against the municipality should be dismissed. *Defendant's Brief* at 11.

Under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978), § 1983 liability cannot be imposed on a theory of *respondeat superior*. In *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984), the Sixth Circuit held that at a minimum, a §1983 plaintiff must show that a supervisory official was personally involved in the alleged conduct, or at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *See also, Poe v. Haydon, supra*, 853 F.2d at 429 (it must be shown that supervisor "actively participated in or authorized" challenged conduct).

> In terms of municipal liability, *Monnell* held:
> "A municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 436 U.S. at 691. (Emphasis in original).

Instead, a municipality incurs liability only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*; *Pembaur v. Cincinnati*, 475 U.S. 469, 477, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained, "The requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that the municipality is held responsible only for the latter." In addition, § 1983 liability can be based on a policy of inadequate training or supervision, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

First and foremost, there can be neither supervisory nor municipal liability if there is

no constitutional tort. In this case, no reasonable jury could find that Plaintiff's constitutional rights were violated. In addition, the Plaintiff has not set forth any facts to support a finding that the Village of Lexington has any policy or custom which resulted in the violation of constitutional rights, or that the Village has failed to properly train its police force. Further, even assuming that it were shown that Defendant Miller violated his constitutional rights, both the Supreme Court and the Sixth Circuit have held that a single incident of the use of excessive force cannot by itself support an inference of a customary practice sufficient to justify municipal liability under § 1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dorsey v. City of Detroit*, 858 F.2d 338, 345 (6th Cir. 1988). Likewise, under *Tuttle*, "the fact that only a single unconstitutional act is alleged supports a conclusion that the act in question was not caused by a policy or that the need for heightened training or screening was not obvious." *Johnson v. City of Detroit, supra,* 944 F.Supp. at 599.

For different reasons, Plaintiff's state claim of *respondeat superior* or vicarious liability against the Village must fail. The municipal Defendant enjoys governmental immunity pursuant to M.C.L. 691.1407(1), which states that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Plaintiff has submitted nothing to support a conclusion that the Village was acting outside of its authority during the course of the events in question. More obviously, the finding that Defendant Miller is not liable for the underlying claims of assault

and battery or gross negligence defeats Plaintiff's claim of vicarious liability against Defendant Village.

## IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Docket #21] be GRANTED as to both the federal and state claims, dismissing Defendant Miller and Defendant Village of Lexington WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the

objections.

> s/R. Steven Whalen
> R. STEVEN WHALEN
> UNITED STATES MAGISTRATE JUDGE

Dated: December 12, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 12, 2008.

> s/Susan Jefferson
> Case Manager